Filed 4/20/22  In re Lopez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re REY CORONEL LOPEZ, | C093945 |
| On Habeas Corpus. | (Super. Ct. No. 21HC00089) |

Folsom State Prison inmate Rey Coronel Lopez filed this petition for writ of habeas corpus challenging a decision by the California Department of Corrections and Rehabilitation (CDCR) adjudicating him guilty of a prison disciplinary violation for refusing to accept assigned housing on February 26, 2019.[1] The violation was classified as serious, and Lopez was assessed a 61-day credit forfeiture.

---

[1] The discipline in question was imposed while Lopez was an inmate at Avenal State Prison, which is in the Fifth Appellate District. While "A Court of Appeal may deny without prejudice a petition for writ of habeas corpus that is based primarily on facts occurring outside the court's appellate district" (Cal. Rules of Court, rule 8.385(c)(1)), we decline to do so here where Lopez is currently confined at Folsom State Prison, which is within this court's appellate district, and Lopez filed in the Sacramento County Superior Court in the first instance, which ruled on the merits of the petition.

1

The discipline arises from Lopez's refusal to sign an "Informational Chrono" acknowledging he was "willing to program on a Non Designated Programming Facility [(NDPF)]." Lopez claims the disciplinary decision must be vacated because: (1) the decision to assign him to an NDPF was not made by a classification committee as required by CDCR's own regulations (see Cal. Code Regs.,[2] tit. 15, § 3375, subd. (c)); (2) CDCR's NDPF rules were not properly promulgated under the Administrative Procedure Act;[3] and (3) there is not "some evidence" Lopez refused a housing assignment.

We shall conclude the decision to assign Lopez to an NDPF is invalid because it was not made by a classification committee as required by section 3375, subdivision (c). Further, we hold that there is not "some evidence" Lopez refused an assignment, even were the invalidity of the assignment alone insufficient to invalidate the disciplinary adjudication. Given our conclusions, we need not decide whether CDCR's rules pertaining to NDPF's were lawfully promulgated.

---

This court has original jurisdiction to entertain the writ petition, which we choose to exercise under the particular circumstances of this case. (Cal. Const., art. VI, § 10; see also *In re Kler* (2010) 188 Cal.App.4th 1399, 1402-1404.)

[2] Further undesignated section references are to title 15 of the California Code of Regulations.

[3] On June 8, 2020, the Office of Administrative Law determined that rules concerning NDPF's, which are contained in various memoranda, constitute a "regulation" and thus should have been adopted pursuant to the Administrative Procedure Act. CDCR is currently in the process of promulgating regulations governing NDPF's through the Administrative Procedure Act.

BACKGROUND

I

*Rules Violation Report*

On January 2, 2019, Avenal State Prison, where Lopez was then confined, underwent a mandatory mission change to an NDPF, pursuant to which its general population and sensitive needs yards were combined.

According to the rules violation report (report) completed by Lieutenant A. Lara, he/she interviewed Lopez on February 26, 2019, to explain mandatory changes to the "Non-Designated Programming" at Avenal State Prison.  During the interview, Lara reviewed with Lopez a CDCR form relating to participation in programming.  Lara characterized Lopez's responses as indicating a refusal to answer questions regarding his participation in nondesignated programming, noting that Lopez indicated: "I'm ok, I am [general population], I want to stay [general population]."  Lara interpreted Lopez's statement "as a refusal to program in the NDPF and Lopez stated he understood."

During the interview, Lopez was requested to sign CDC Form 128-B, "Informational Chrono."[4]  This document, cited by Lara in the report, stated in part:  "On January 2, 2019, Avenal State Prison (ASP) underwent a mission change to a Non-Designated Programing [*sic*] Facility.  As you are currently housed at [Avenal State Prison] you meet the requirements as a NDPF inmate.  You do not have the choice to refuse this designation, however in order to limit disruption to this mission change, you are expected to program on a NDPF.  If you refused [*sic*] to program, disciplinary action may be taken against you.  Are you willing to program on a Non Designated

_____

[4]     CDC Form 128-B "is used to document information about inmates and inmate behavior.  Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters."  (§ 3000.)

Programming Facility?" Below that statement, there are blanks next to the words "Yes" and "No." There are also blanks for "Comment," and the inmate's and "staff" signatures. There is no mark next to either the word "Yes" or "No." Rather, the following is written by hand: "I'm OK, I am [general population], I want to stay [general population]." In the place for the inmate's signature, the following is written by hand: "Refused to Sign." Lara signed in the place provided for "staff."[5] The report charged Lopez with violating section 3005, subdivision (c), which provides that inmates "shall not refuse to accept a housing assignment . . . ."

The matter proceeded to a disciplinary hearing on March 5, 2019, at which Lopez was present. He pled not guilty to the charge, and claimed, among other things, that prison officials lacked the authority to demand he agree to "program on a Non-Designated Programming Facility" because any determination affecting his placement within an institution had to be made by a classification committee. (See § 3375, subd. (c).) At the hearing, the hearing officer asked Lopez if he was "willing to accept placement on a Non-Designated Programming Facility," and Lopez responded, "No, I'm ok."

The hearing officer found Lopez guilty of the violation as charged. He determined Lopez's statement that he was general population and wanted to "stay [general population]" was a "refusal to accept NDPF programming," and Lopez's response to the hearing officer's question was an admission of guilt. As for Lopez's assertion that any determination affecting his placement within the institution had to be made by a classification committee, the hearing officer concluded section 3375, subdivision (c)

---

[5] In the "Comment" section, the following is written by hand: "I explained to Lopez that I am interpreting his statement of 'I'm OK, I am [general population], I want to stay [general population]' as a refusal to program in the NDFP. Lopez stated he understood."

4

relied on by Lopez, had "no bearing on the outcome of this [rules violation report]" because a July 2018 memorandum authored by then-CDCR Secretary Scott Kernan regarding "Non-Designated Programming Facility Expansion" authorized discipline for noncompliance with transfer and/or housing placement recommendations. The adjudication was approved on review on March 14, 2019, and we will refer to that as the date of decision.

In the meantime, Lopez was transferred to Folsom State Prison, a non-NDPF, on March 6, 2019. The disciplinary adjudication remains, however, a matter of record and may be considered by the prison in its subsequent decisions.

## II

### *Subsequent Procedural History*

Lopez pursued an administrative appeal of the disciplinary finding and exhausted his administrative remedies. He filed a petition for writ of habeas corpus in the superior court, which was denied. He then sought relief in this court by petition for writ of habeas corpus on April 21, 2021. After soliciting informal opposition to the petition, we issued an order to show cause returnable in this court and appointed Lopez, who had been proceeding in pro. per., counsel. Respondent filed its return on November 11, 2021. On December 23, 2021, Lopez's counsel was granted leave to file a supplemental petition, which necessitated leave for a supplemental return. The last of the pleadings, the traverse to the return and supplemental return, was filed on March 10, 2022.[6] Having reviewed the pleadings and exhibits on file with this court, the court finds no evidentiary hearing is

---

[6] On January 5, 2022, this court issued an order directing that the original and supplemental petitions be treated as a single petition, and that the order to show cause previously issued in this case shall be deemed to embrace the claim raised in the supplemental petition.

5

necessary to resolve this petition. (See Cal. Rules of Court, rule 8.386(f).) Considering those facts that are not in dispute, Lopez is entitled to relief.

DISCUSSION

While addressing the merits, respondent also complains that Lopez's challenge to the disciplinary adjudication is not cognizable or is moot because his lost credits have been restored. We disagree. "Habeas corpus may be used to broadly vindicate rights in confinement, including 'not only statutory or constitutional violations, but also violations of administrative regulations.' (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 309, fn. 10.)" (*In re Marti* (2021) 69 Cal.App.5th 561, 566.) Accordingly, Lopez's claim that CDCR acted inconsistently with rights afforded by CDCR's own regulations is cognizable. Moreover, the claim is not moot because this court can provide effective relief by vacating the disciplinary violation at issue so that it may not be considered in subsequent prison decisions. (See *id.* at pp. 566-568.)

Turning to the merits, Lopez claims the disciplinary decision finding him guilty of refusing to accept a housing assignment must be vacated because the assignment itself violated CDCR's own regulations, and thus was invalid. We agree.

Section 3375, subdivision (c) provides: "Each determination affecting an inmate's placement within an institution or facility, transfer between facilities, program participation, privilege groups, or custody designation *shall be made by a classification committee* composed of staff knowledgeable in the classification process. Exceptions include waiting list placements and assignments to Cognitive Behavioral Interventions (CBI) which can be made without a classification committee action based upon a health care services referral; or a guilty finding pursuant to subsection 3315(f)(5)(J)2. or 3315(f)(f)(J)3." (Italics added.)

Prior to issuing the order to show cause in this case, we asked respondent to serve and file an informal response addressing, among other things, "[w]hether the decision to convert Avenal State Prison to a Non-Designated Programming Facility 'affect[ed]

6

[Lopez's] placement within an institution/facility, transfer between facilities, program participation, privilege groups, or custody designation' within the meaning of [section] 3375(c)." In its informal response, respondent conceded that Avenal's conversion "affected Lopez's housing placement," noting that "the general population yard Lopez was previously housed on ceased to exist."

In its return, however, respondent now takes the position that the conversion did "not physically change where Lopez was housed or alter any of his case factors." Respondent observes that the NDPF did not affect Lopez's placement within Avenal or reflect a transfer between facilities and did not otherwise alter his "program participation, privilege group, or custody designation as provided in section 3375." According to respondent, "[t]he only change was CDCR's expectation that Lopez positively program on a NDPF that includes inmates who were previously housed on [sensitive needs] and [general population] yards." Because the return is the operative pleading, we shall disregard respondent's inconsistent assertion in its informal response and consider whether Lopez's assignment to Avenal's NDPF affected his placement within Avenal, a transfer between facilities, program participation, privilege group, or custody designation.

In support of its assertion that Lopez's housing assignment to Avenal's NDPF did not affect Lopez's placement within Avenal, a transfer between facilities, program participation, privilege group, or custody designation, respondent cites to portions of the declaration of F. Aguiar, the litigation coordinator at Avenal. Aguiar, however, does not specifically opine as to whether Lopez's housing assignment to Avenal's NDPF affected Lopez's placement within Avenal, a transfer between facilities, program participation, privilege group, or custody designation. Rather, he states, "Avenal's conversion to a NDPF did not physically change where Lopez was housed or alter any of his case factors . . . . All that changed was CDCR's expectation that Lopez positively program on a NDPF that includes inmates who were previously housed on [sensitive needs] and [general population] yards."

7

It cannot be said that the decision to house Lopez on Avenal's NDPF did not affect his placement within Avenal where, unlike before, he was required to house with inmates who were previously housed on the sensitive needs yard. As we discuss *post*, this interpretation is consistent with that expressed by the secretary of CDCR.

While section 3375, subdivision (c) provides that "[e]ach determination affecting an inmate's placement within an institution or facility . . . shall be made by a classification committee," respondent asserts a classification committee was not required to assign Lopez to Avenal's NDPF because Lopez's case factors did not change. Respondent again cites to the declaration of F. Aguiar in support of its interpretation of section 3375, subdivision (c).

According to Aguiar, "The purpose [of a classification committee] is to evaluate the inmate's case factors and determine if he is appropriately housed." Because "[a]n inmate's case factors, including his program participation, privilege group and custody designation do not change when a yard is converted to a NDPF," Aguiar states that section 3375, subdivision (c) "does not require an inmate to attend a classification committee for continued housing on a yard that has been converted to a NDPF." Respondent suggests this court "should defer to CDCR's interpretation of its own regulations because its interpretation is reasonable and entitled to deference."

" 'In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage.' " (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1037.) "An agency interpretation of the meaning and legal effect of a statute [or regulation] is entitled to consideration and respect by the courts; however, . . . the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit

of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7; see also *De La Torre v. California Horse Racing Bd.* (2017) 7 Cal.App.5th 1058, 1065.) Factors that weigh in favor of deference include where the text itself is ambiguous, and where the interpretation urged is the result of careful consideration by senior agency officials. (See *De La Torre*, at p. 1066.)

Aguiar's opinion that section 3375, subdivision (c) did not necessitate classification committee review following the NDPF conversion appears to conflict with the text of section 3375, subdivision (c). As set forth above, section 3375, subdivision (c) provides that "[e]ach determination affecting an inmate's placement within an institution or facility . . . shall be made by a classification committee," and as we concluded above, the decision to house Lopez on Avenal's NDPF affected Lopez's placement within Avenal.

Aguiar's interpretation also appears to be at odds with that of the secretary of CDCR, as set forth in memoranda regarding "Non-Designated Programming Facility Expansions." These memoranda instruct in pertinent part: "Institutions must document in the *Committee Action* or reception center classification documents that the inmate was advised of programming expectations and positive programming reasoning for referral to an NDPF. The inmate's stated preference, and his agreement or disagreement, shall be documented." (Italics added.) This language seems to contemplate that inmates who continue to be housed in facilities that are converted to NDPF's are required to attend a classification committee where they will be advised of programming expectations *before* being assigned to NDPF's.[7]

---

[7] In support of its interpretation that a classification committee is not required, respondent also submits what appears to be a draft of a document entitled, "Frequently Asked Questions Non-Designated Programming Facilities." The document is dated January 14, 2019. One of the questions listed is, "Are there additional committees required to refer inmates to NDPF's?" The response given to that question is as follows:

For these reasons, we decline to defer to respondent's interpretation of section 3375, subdivision (c) and conclude Lopez's assignment to an NDPF is invalid because it was not made by a classification committee. This calls into question the disciplinary adjudication since it is predicated on an invalid assignment.

We further find that, even if the invalid assignment did not itself invalidate the disciplinary adjudication, there is insufficient evidence Lopez refused a housing assignment under the regulation he was adjudicated of violating. To comport with the minimum requirements of procedural due process, the hearing officer's findings must be supported by "some evidence." (*Superintendent v. Hill* (1985) 472 U.S. 445, 454.) According to Lopez, his discipline "rests entirely on his negative verbal responses to correctional officials who asked him about his new housing assignment to an NDPF," and those responses "cannot constitute 'refusing' to accept a housing assignment." We agree.

At the disciplinary hearing, Lopez asked Lieutenant Lara if he asked Lopez to move or gave "a 'direct order' to move to a NDPF." Lara responded, "I asked [Lopez] if he wanted to move to an NDPF." While the informational chrono advised Lopez he did "not have the choice to refuse this designation," it then asked him if he was "willing to program on a Non Designated Programming Facility." In declining to acknowledge in writing that he was willing to do so, Lopez explained, "I'm OK, I am [general population], I want to stay [general population]." The hearing officer asked Lopez whether he was willing to accept placement on an NDPF. Lopez responded similarly: "No, I'm ok." When considered in the context of his prior statement and the circumstances of this case, Lopez's statement, "I'm ok," can only be interpreted as

---

"Consistent with current policy regarding committee review and referral for transfer, there are no additional committee reviews for placement to a NDPF." As noted, this document appears to be a draft insofar as it contains visible edits in red. In addition, it appears to apply to inmates who are transferred into an NDPF facility from outside and have already been subject to committee review.

10

expressing his desire to remain in general population. Under the circumstances of this case, his statements cannot be characterized as a refusal to accept assigned housing. Respondent emphasized in the return and supplemental return that "nothing changed" for Lopez following the conversion since NDPF was "a general population yard." If the NDPF is a general population yard, as respondent represents, Lopez's statements that he wished to remain in general population cannot reasonably be construed as a refusal to accept assigned housing. One does not refuse to accept a thing by stating that he or she desires that same thing.

## DISPOSITION

The disciplinary adjudication of March 14, 2019, is reversed and respondent is directed to remove the record of this adjudication from Lopez's file in a manner sufficient to establish that it will not improperly factor into future prison decisions, including further prison disciplinary hearings. (Cf. *In re Marti*, *supra*, 69 Cal.App.5th at pp. 567-568, 570; see also § 3326.)

/s/
Robie, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.

11