Filed 1/31/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBRA ABNEY,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>STATE DEPARTMENT OF HEALTH CARE SERVICES et al.,<br><br>　　　Defendants and Respondents. | A164775<br><br>(San Francisco City & County Super. Ct. No. CPF20517020) |

In 2018, the Social Security Administration notified appellant Debra Abney that it would begin withholding almost $600 from her Social Security payment each month to satisfy a debt she owed the IRS. The City and County of San Francisco (the County) subsequently notified Abney that it would consider the garnished money as income for the purposes of calculating her eligibility for benefits under Medi-Cal, making her ineligible to receive those benefits without a share of cost. Abney unsuccessfully sought writs of administrative mandate and ordinary mandamus seeking to reverse that decision, the trial court rejecting her argument that the tax garnishment was not income "actually available to meet [her] needs" under the regulations implementing the Medi-Cal program. We also reject the argument, and we affirm.

1

# BACKGROUND

## Medicaid and Medi-Cal

Medi–Cal is California's program under the joint federal-state program known as Medicaid. (Welf. & Inst. Code, § 14000 et seq.) Medicaid provides federal financial assistance to participating states to support the provision of health care services to certain categories of low-income individuals and families, including the aged, blind, and disabled, as well as pregnant women and others. (42 U.S.C. § 1396 et seq.)

Because California has opted to participate in the Medicaid program and receive federal matching funds, it must comply with all federal Medicaid requirements. (*Conlan v. Bontá* (2002) 102 Cal.App.4th 745, 753.) Among other things, the state must administer its Medicaid program through a plan that has been approved by the federal Centers for Medicare and Medicaid Services. (See 42 U.S.C. § 1396a; 42 C.F.R. §§ 430.10, 430.15(b) (2014); Welf. & Inst. Code, § 14100.1.) Respondent, the California Department of Health Care Services (Department), is the state agency that administers Medi-Cal, but counties are responsible for eligibility determinations, subject to the direction of the Department. (Welf. & Inst. Code, § 14100.1; Cal. Code Regs.,[1] tit. 22, § 50004, subd. (c).)

The federal Medicaid Act requires that a state plan must "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of Health and Human Services], available to the applicant or recipient . . . ." (42 U.S.C. § 1396a(a)(17).) A

---

[1] Further undesignated citations are to Title 22 of the California Code of Regulations.

state's "methodology to be employed in determining income and resource eligibility for individuals . . . may be less restrictive, and shall be no more restrictive" than the federal Medicaid standard. (42 U.S.C. § 1396a(r)(2)(A); 42 C.F.R. § 435.601(d).)

California offers several different Medi–Cal programs, including, as relevant here, the Aged, Blind, and Disabled Federal Poverty Level Program (ABD FPL) and the Aged, Blind and Disabled Medically Needy Program (ABD MN). (42 U.S.C. §§ 1396a(a)(10)(A)(ii)(X), (a)(10)(C); Welf. & Inst. Code, §§ 14005.7, 14005.40.) The ABD FPL program provides medical coverage to eligible California residents with no share of cost, provided that their "[c]ountable income, as determined in accordance with Section 1902(m) of the federal Social Security Act (42 U.S.C. Sec. 1396a(m)), does not exceed" certain limits. (Welf. & Inst. Code, § 14005.40, subd. (c)(1) see *id*. subd. (c).) The ABD MN program allows individuals to receive Medi–Cal when their income exceeds the limits for the ABD FPL program. (See Welf. & Inst. Code, §§ 14005.7; 14005.) However, under the ABD MN program, recipients are required to pay a share of cost if they incur medical expenses in a given month. (Welf. & Inst. Code, §§ 14005.7, subds. (b), (c); 14005.9.)

Under California's Medi–Cal regulations, "Income includes benefits in cash or in kind" from various sources, but income "shall be considered as income only if it is currently available in accordance with Sections 50513 through 50517." (Cal. Code Regs., tit. 22, § 50501, subds. (a), (b).) The referenced regulations provide that "[o]nly income which is actually available to meet the needs of a person or family shall be considered in determining that person's or family's share of cost," and similarly, "[i]ncome which is not available to meet current needs of a person or family shall not be considered

3

in determining that person's or family's share of cost." (Cal. Code Regs., tit. 22, § 50513, subd. (a); Cal. Code Regs., tit. 22, § 50515, subd. (a).)

**Abney's Medi–Cal Benefits**

Since at least November 1, 2011, Abney has been receiving Medi–Cal benefits—initially through the ABD FPL program—for a household of one.

On November 2, 2018, the Social Security Administration sent Abney an award letter informing her that it would begin withholding $598.20 from her monthly Social Security payment "to pay your debt to the IRS," leaving her with a monthly Social Security payment of $845.80.

On March 19, 2019, the County sent Abney a "Notice of Action," informing Abney that her Medi–Cal share of cost had changed to $729 per month beginning April 1, 2019. The County determined that Abney had gross unearned income of $1,484.50, and after an income deduction of $155 and a $230 disregard, a net non-exempt income of $1,099, exceeding the ABD FPL income limit of $1,041, and making her ineligible for that program. However, the County calculated that Abney was eligible for "Regular Medi–Cal" with a $729 monthly share of cost, based on an income deduction of $155.50 and a "maintenance need" of $600.

On June 10, Abney requested an administrative hearing on the Notice of Action. Abney submitted a statement of position, arguing that the $598.20 withheld from her Social Security payment was not "income which is actually available to meet [her] needs" within the meaning of section 50513, subdivision (a), and should not have been included in determining her Medi–Cal eligibility. A hearing was held on September 26, and on December 3, the administrative law judge denied Abney's claim, relying on Title 20, section 416.1123, subdivision (a)(2) of the Code of Federal Regulations, which provides: "We also include more [of your unearned income] than you actually

4

receive if amounts are withheld from unearned income because of a garnishment, or to pay a debt or other legal obligation, or to make any other payment such as payment of your Medicare premiums."

**The Proceedings Below**

On February 13, 2020, Abney filed in San Francisco County Superior Court a combined petition for writ of administrative mandate under Code of Civil Procedure sections 1094.5 and ordinary mandamus under Code of Civil Procedure section 1085. Abney alleged that the County violated its legal duty to determine her Medi–Cal eligibility by failing to comply with the California regulations defining available income.

On December 1, 2020, while her case was pending in the trial court, Abney again became eligible to receive Medi-Cal under the ABD FPL program after the Legislature raised the income limits for that program. Abney maintains, however, that because of the County's erroneous eligibility calculation, she was required to pay $135 per month in Medicare premiums from April 2019 through November of 2020.

On February 10, 2022, the trial court denied the petition for writ of mandate, concluding as follows:

"[T]he State Plan and the Welfare and Institutions Code both state that 'countable income' is determined in accordance with section 1902(m) of the Medicaid statute, codified at 42 U.S.C. section 1396a(m). (See California State Plan, Supplement 8a to Attachment 2.6, at p. 6; Welf. & Inst. Code sec. 14005.40.) The federal Medicaid statute, in turn, defers to the Social Security Act's definition of 'income.' (See 42 U.S.C. sec. 1396a(m), referencing 42 U.S.C. sec. 1382a; see also Welf. & Inst. Code sec. 14005.7 [income under the Medically Needy program is 'determined, defined, counted, and valued, in accordance with Title XIX of the federal Social Security Act'].)

5

'Unearned income' is expressly defined in the federal Social Security regulations to include amounts withheld to pay a debt.  (20 C.F.R. § 416.1123 ['We also include more than you actually receive if amounts are withheld from unearned income because of a garnishment, or to pay a debt or other legal obligation']; see also *Cervantez v. Sullivan* (9th Cir. 1992) 963 F.2d 229, 232 ['we followed four other circuits in holding the word "received" is used in subsection (a)(2)(B) as a "mere grammatical link," and does not require that funds be physically received by claimants to be counted as "income" '].)

"Additionally, pursuant to its statutory authority under Welfare and Institutions Code sections 14005.40 and 14001.11, the Department provides guidance to counties regarding Medi-Cal eligibility.  The Department has recently advised counties on this precise issue, consistently instructing them that, pursuant to the above-mentioned rules, income garnished by the IRS for tax debt should be counted when determining Medi-Cal income eligibility.  (Pet. RJN, Ex. 24; Hennessy Decl., ¶ 2, Ex. 1.)"

Abney filed a notice of appeal.

## DISCUSSION

### Introduction

The only issue on appeal is whether the County erred in including the $598.20 garnished each month from Abney's Social Security benefit to pay her debt to the IRS as "income" for the purposes of calculating her eligibility for the ABN FPL program.  Because the facts are undisputed, we review this pure question of law de novo.  (See *Cassidy v. California Board of Accountancy* (2013) 220 Cal.App.4th 620, 627.)

Abney does not dispute that under federal Medicaid regulations, the garnishment counts as income in determining her Medicaid eligibility.  (See 20 C.F.R. § 416.1123.)  Rather, she argues that California's Medi–Cal

6

regulations—in particular California Code of Regulations, Title 22, sections 50513 and 50515, requiring that income be "actually available to meet [her] needs" in order to be considered—have set up a less restrictive income definition than the federal standard, a less restrictive standard that requires excluding the garnishment from her income.

The Department offers several arguments why the garnishment should be included in Abney's income. It points to the statement, in both the statute defining eligibility for the ABN FPL program and the state Medicaid plan, that "[c]ountable income" is "determined in accordance with section 1902(m) of the federal Social Security Act (42 U.S.C. Sec. 1396a(m)) . . . ." (Welf. & Inst. Code, § 14005.40, subd. (c)(1); see *id.*, § 14005.7, subd. (c) ["monthly income" for the ABD MN program is "determined, defined, counted, and valued" under Title XIX of the federal Social Security Act].)[2] And the Department argues that the state regulations apply to the share of cost calculation for the ABD MN program, not to eligibility determinations; that the regulations do not apply at all to the ABD FPL program; and that even under the regulations, income withheld as a tax garnishment is "available" to meet Abney's needs. We agree with this last argument, and on that basis affirm the trial court's order. Before explaining why, we first consider the issue of our standard of review, specifically, how much, if any, deference must we pay to the Department's interpretation of the regulations.

---

[2] We granted the Department's unopposed request to take judicial notice of Supplement 8a to Attachment 2.6–A of California's Medicaid State Plan, titled "Methodologies for Treatment of Income That Differs from Those of the SSI . . . Program," which sets eligibility requirements based on "[c]ountable income, as determined in accordance with Section 1902(m) of the [federal Social Security] Act."

7

The question was exhaustively discussed in the leading case of *Yamaha Corporation of America v. State Board of Equalization* (1998) 19 Cal.4th 1, 6–11 (*Yamaha*), and also by this court, including in *State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 302–306 (*Duncan*), *Pacific Gas and Electric Company v. Public Utilities Commission* (2015) 237 Cal.App.4th 812, 839–840, and *Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251–1252.[3]  As applicable here, *Yamaha* said this:

"[T]wo broad categories of factors relevant to a court's assessment of the weight due an agency's interpretation [are] [t]hose 'indicating that the agency has a comparative interpretive advantage over the courts,' and those 'indicating that the interpretation in question is probably correct.' " (*Yamaha*, *supra*, 19 Cal.4th at p. 12.)  "In the first category are factors that 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion.  A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar

---

[3] We began our discussion in *Duncan* with this paragraph:  "The broad question of the deference due to administrative decisions has perplexed some of our best judicial minds.  (See maj. opn. of Brown, J. and the conc. opn. of Mosk, J., in *Yamaha*, [*supra*,] 19 Cal.4th [at p. 15] [citing, e.g., *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, (Tobriner, J.); *Culligan Water Conditioning v. State Bd. Of Equalization* (1976) 17 Cal.3d 86 (Sullivan, J.); *Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753 (Traynor, J.); *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321 (Gibson, C.J.)]; see also *Dare v. Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 803 (conc. & dis. opn. of Traynor, J.); *Laisne v. Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 848 (dis. opn. of Gibson, C.J.).) . . ."  (*Duncan*, *supra*, 162 Cal.App.4th at p. 302.)

with regulations it authored and sensitive to the practical implications of one interpretation over another.' [Citation.]" (*Ibid.*) The second group of factors—those suggesting the agency's interpretation is likely to be correct— "includes indications of careful consideration by senior agency officials ('an interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than [one] contained in an advice letter prepared by a single staff member' [citation]), evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . . , and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted." (*Yamaha*, *supra*, 19 Cal.4th at p. 13.)

In support of its opposition to Abney's petition, the Department submitted a declaration from Brooke Hennessy, a Staff Services Manager II in the Policy Development Branch of the Medi–Cal Eligibility Division of the Department. According to Hennessy, "[f]rom 2018 to the present, the Department has advised counties on four separate occasions that taxes, garnishments, and liens are considered 'available income' for purposes of Medi–Cal eligibility, and that the definition of 'income' relies on the federal social security regulations, codified at 20 CFR 416.1123." Hennessy's declaration also attached four emails from various employees of the Medi-Cal Eligibility Division in response to questions from various California counties, advising that tax withholding or tax garnishments should be considered "available income" for the purpose of calculating Medi-Cal eligibility.

The relevant factors in the first category under *Yamaha*—those assuming the agency has expertise and technical knowledge—counsel in favor of limited deference to the department's interpretation of the language of sections 50513 and 50515. Determining whether the phrase "actually

9

available to meet the needs of a person" includes income garnished to satisfy a tax debt does not require expertise or technical knowledge; indeed, Abney's argument that it does not is based on dictionary definitions. The regulations are not "technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." (*Yamaha, supra*, 19 Cal.4th at p. 12; see *De La Torre v. California Horse Racing Board* (2017) 7 Cal.App.5th 1058, 1071 (*De La Torre*).) Although issues of fact or policy necessarily motivated the Legislature and the Department in deciding whether to consider tax withholding available income, these fact and policy issues have nothing to do with the interpretation of the regulations themselves.

The factors in the second category— those suggesting the agency's interpretation is likely to be correct—also counsel in favor of limited deference to the Department's interpretation. There is no indication that the interpretation was adopted after careful consideration by senior agency officials. As the Department concedes, the interpretation was not adopted after public notice and comment. And the interpretation appears in only a handful of emails prepared by single staff members, emails that contain little in the way of discussion or analysis. Although sections 50513 and 50515 were last updated in 1986 and 1987 respectively, the first email provided by the department evidencing its interpretation is from 2018, some 32 years later.[4]

_____

[4] We granted the Department's unopposed request to take judicial notice of a May 2, 1985 All-County Welfare Directors Letter from the Department, providing that "[a]s a result of the clarified definition of earned income under [The Deficit Reduction Act of 1984] . . . counties shall no longer subtract mandatory payroll deductions from gross earned income. This applies to all AFDC-MN cases (including those in which a stepparent's income or the income of an ABD-MN is used), the medically indigent

10

In short, while we consider the Department's interpretation of the regulations, we extend that interpretation only limited deference. We nevertheless conclude that the Department's interpretation is correct.[5]

<hr />

pregnant woman and the medically indigent child." The Department cites this letter as evidence that "since 1985, because of a contemporaneous change in federal regulations, California has consistently treated tax withholdings as available income." But it is unclear whether the policy set forth in letter applies to the ABD FPL program at issue here. In any event, the letter does not mention, much less interpret, sections 50513 or 50515, and so is of limited value in demonstrating the longstanding nature of the Department's interpretation of those regulations.

[5] Abney also argues that the Department's interpretation is "void" for failure to comply with the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). But the APA's rulemaking requirements apply only to regulations, and "[i]t is not at all clear that an agency's interpretation of its own regulation constitutes a regulation itself. A regulation 'interpret[s] . . . the law enforced or administered' by the agency. (Gov. Code, § 11342.600.) It could be argued that 'the law enforced or administered' by the agency does not include the agency's own regulations, but only the governing statute." (*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 434.)

Even assuming, however, that the Department was required to, but did not, comply with the APA in interpreting the regulations, this means only that we do not accord the interpretation any special deference. But we can still adopt it as our own. (See *Alvarado v. Dart Container Cororation of California* (2018) 4 Cal.5th 542, 558 [interpretation adopted without APA compliance "should not be afforded any special weight or deference, but it is nonetheless something a court may consider, and assuming the court is persuaded that the agency's interpretation is correct, the court may adopt it as its own"]; *Malaga County Water District v. Central Valley Regional Water Quality Control Board* (2020) 58 Cal.App.5th 418, 443 ["the penalty for adopting a void regulation is not a complete rejection of an agency's actions, but the elimination of any deference to the choice supporting that action"].)

**The Tax Garnishment Is "Actually Available" to Meet Abney's Needs Under Sections 50513 and 50515**

"Rules governing the interpretation of statutes also apply to interpretation of regulations. [Citation.] 'In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage.' " (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1037.) "We do not construe a regulation in isolation, but instead read it with reference to the scheme of law of which it is a part, so that the whole may be harmonized and retain effectiveness. (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214.)" (*De La Torre, supra*, 7 Cal.App.5th at p. 1066.)

Abney has not pointed us to, nor have we found, any cases interpreting the "actually available" language of sections 50513 or 50515. But in considering whether income garnished to pay a tax debt is "actually available to meet the needs of a person" under section 50513, we take guidance from the Supreme Court's decision in *Heckler v. Turner* (1985) 470 U.S. 184 (*Heckler*), which considered a similar question: whether income tax withholding should be included in "any . . . income and resources" of the family claiming aid under the Aid to Families with Dependent Children (AFDC) program. Before 1981, the statute required the state agency to exclude from income any "expenses reasonably attributable to the earning of any such income"; but in 1981 this provision was eliminated and replaced with a flat $75 "work expense" deduction or "disregard" to be taken from an individual's "earned income." (*Id.* at p. 186–187.) The Supreme Court

12

concluded that mandatory tax withholding should be considered "income" under the statute, with the following explanation:

"[T]he principle of actual availability has not been understood to distinguish the treatment of tax withholdings from that of other work expenses. Rather, it has served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients. [¶ . . . [¶]

"This Court, too, has viewed the actual availability principle 'clearly [to] comport with the statute,' [citation], and has not hesitated to give it effect in that case and others. [Citations.] But the Court's cases applying the principle clearly reflect that its purpose is to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need. . . .

"The failure of the federal agencies administering AFDC to apply the availability principle to distinguish mandatory tax withholdings is not surprising. The sums they consume are no less available for living expenses than other sums mandatorily withheld from the worker's paycheck and other expenses necessarily incurred while employed. . . . [S]ums mandatorily withheld for obligations such as union dues, medical insurance, or retirement programs no more pass through the wage earner's hands than do mandatory tax withholdings. Insofar as the Court of Appeals' definition pivots on availability to meet family expenses, any distinction between various species of payroll withholdings would be 'metaphysical indeed.' [Citation.] Likewise, the expenditure of funds on other work-related expenses, such as transportation, meals, and uniforms, just as effectively precludes their use for

13

the needs of the family. That they first pass through the wage earner's hands is a difference of no apparent import: 'the time of payment seems . . . but a superficial distinction; all necessary expenses must be met sometime.' [Citation.] There is no reason, then, why the actual availability principle, once applied to exclude mandatory tax withholdings from the definition of income, would not similarly apply to other mandatory payroll withholdings and other standard work expenses, both of which also render a portion of a wage earner's income unavailable to meet the recipient family's needs. Yet this would negate Congress' enactment of the flat-sum work-expense disregard in 1981. The failure of the Court of Appeals to outline a principled limit to the applicability of the availability principle to sums deducted from gross income is telling." (*Heckler*, *supra*, 470 U.S. at pp. 200–202, fn. omitted.)

In sum, the actual availability principle does not distinguish between income that is required to be used for work-related expenses and that which is available for the recipient to spend, but rather between income that actually exists, as opposed to income that is assumed or imputed. Income is "actually available" even if it never passes through the wage earner's hands. So, income mandatorily withheld to pay taxes, or as here, garnished to satisfy a tax debt, is nevertheless "actually available" to the recipient.

More recently, in *Christensen v. Lightbourne* (2019) 7 Cal.5th 761 (*Christensen*), our Supreme Court considered a similar question to that presented here: whether a household member's income that is used to pay child support for a child living in another household counts as income "reasonably anticipated" to be "received" by the paying household within the meaning of Welfare and Institutions Code section 11265.2 for purposes of determining eligibility for state welfare benefits under the CalWORKs

program.  (*Christensen, supra*, 7 Cal.5th at p. 766.)  As indicated, *Christensen* came through our court, and we held that it did.  The Supreme Court affirmed our judgment, concluding that the agency's determination that such income should be counted was reasonable.  Doing so, the court rejected the argument that because the income was not "actually available" to meet the recipient's needs it should not be considered, relying in part on *Heckler*:

"Christensen argues that the funds used to pay Bruce's child support obligations cannot constitute 'income' to her household because her family can never actually receive or benefit from those funds, and therefore the funds are not 'reasonably anticipated' to be 'received' within the meaning of [Welfare and Institutions Code] section 11265.2.  Because the money used to pay child support is not actually available to her household, Christensen contends, that money cannot be counted as part of 'the family's income' for purposes of calculating CalWORKs aid.  ([Welf. & Inst. Code,] § 11450, subd. (a)(1)(A).)  We find this argument unpersuasive.

"In *Heckler*[, *supra*,] 470 U.S. 184 . . . , the high court explained that the principle of actual availability 'traces its origins to congressional consideration of the 1939 amendments' to the Social Security Act, during which legislators expressed concern that state agencies might assume financial assistance from potential sources (e.g., a recipient's children) who might not actually contribute.  (*Heckler*, at p. 200.)  The requirement that income be actually available prohibits states from 'conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients.'  (*Ibid*.)  This policy was endorsed by federal agencies administering the former AFDC program.  (*Id*. at pp. 200–201.)

15

"We recognized a comparable principle in *Cooper v. Swoap* (1974) 11 Cal.3d 856 (*Cooper*), where we held that treating ' "noncash economic benefits," ' such as shared housing, as ' "income" 'under the former AFDC program was invalid. (*Id.* at p. 859.) We explained that 'under the governing provisions of the federal Social Security Act only a recipient's actual available income may be deducted from his basic welfare benefit; arbitrary or constructive "presumptions" of income are not permissible.' (*Id.* at p. 870; see *Waits v. Swoap* (1974) 11 Cal.3d 887, 894–895 (*Waits*) [only the ' "*actual value* of housing and utilities benefits received could possibly constitute income to the recipient" ' (quoting *Cooper*, at p. 870)]; *Mooney v. Pickett* (1971) 4 Cal.3d 669, 680 (*Mooney*) [concluding that a county regulation denying general assistance to 'employable' single men was invalid because 'theoretical employability is a barren resource; it is inedible; it provides neither shelter nor any other necessity of life'].)

"The agency in *Cooper* and *Waits* assigned 'a fictional value' to benefits received by a recipient rather than attempting to measure the 'actual value of the benefits received.' (*Waits*, *supra*, 11 Cal.3d at p. 890; see *Cooper*, *supra*, 11 Cal.3d at p. 870.) Here, by contrast, the child support payments garnished from Bruce's income were not 'fictional,' 'theoretical,' or merely ' "imputed." ' (*Heckler*, *supra*, 470 U.S. at p. 200; *Cooper*, *supra*, 11 Cal.3d at p. 870; *Mooney*, *supra*, 4 Cal.3d at p. 680.) Bruce received actual income—his wages plus his unemployment insurance benefits—from which child support payments were deducted. The circumstances here do not involve 'imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients.' (*Heckler*, *supra*, 470 U.S. at p. 200.)" (*Christensen*, *supra*, 7 Cal.5th at pp. 773–774.)

Here, as in *Christensen*, the $598.20 garnished from Abney's Social Security income to pay the IRS is "not 'fictional,' 'theoretical,' or merely ' "imputed," ' " and "[t]he circumstances here do not involve 'imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients.' (*Heckler*, *supra*, 470 U.S. at p. 200.)" (*Christensen*, *supra*, 7 Cal.5th at p. 774.)

While Abney's tax garnishment is "actually available" income as that term has been understood under *Heckler* and *Christensen*, the regulation further requires that it be "actually available to meet the needs of a person." We conclude that the garnished money is available to meet Abney's needs because it benefits her financially by helping to extinguish her debt to the IRS, a point on which we find *Martin v. Sullivan* (9th Cir. 1991) 932 F.2d 1273 (*Martin*) instructive. There, Martin received monthly survivor benefits from the Railroad Retirement Board, neglected to report additional income, and the Board ultimately began withholding a certain sum from her Social Security benefits to recover the prior overpayments. (*Id*. at p. 1274.) The Ninth Circuit rejected the argument that the withholding was not "income" to Martin under the statutory definition of "income" as "payments *received* as an annuity, pension, retirement or disability benefit . . . ." (*id*. at p. 1275), concluding the withholding was available income: "In the present case, however, the Railroad Retirement Act (RRA) benefits being withheld by the Board—recouped or unrecouped, apportioned or unapportioned—are solely for Martin. The underlying debt to the Board represents overpaid benefits that aided Martin. Moreover, the Board's withholding of the amount to recover the RRA overpayment actually benefitted her by extinguishing an outstanding debt. Thus, because Martin's income is used to pay off her

obligation and because she is benefitting financially from the satisfaction of the debt, the RRA sums being withheld to recover the overpayment are to be considered available income.  See also *Lyon v. Bowen* [(5th Cir. 1986)] 802 F.2d at 797."  (*Martin, supra,* 932 F.2d at p. 1276.)

The same logic applies here.  Abney's income is being used to pay off her obligation to the IRS—which she is legally required to do and from which she benefits financially—and thus the income is considered available to meet her needs within the meaning of sections 50513 and 50515.  Like making child support payments, satisfying Abney's tax obligations to the IRS is properly considered one of her needs.  (See *Emerson v. Steffen* (8th Cir. 1992) 959 F.2d 119, 121–122 ["[I]ncome which has been paid out in child support cannot later be 'used' or 'availed of' to pay another bill, but neither can income which has been paid out for groceries.  Although maybe different in kind, the two are both obligations of the person making the payments . . . [o]ne could reasonably argue that supporting his children is one of the payor's needs"]; *Peura By and Through Herman v. Mala* (9th Cir. 1992) 977 F.2d 484, 491 ["If child support is considered a need of the payor, and arguably it is, then the Secretary may attribute the money as income to both the payor and, in due course, the payee"].)

Finally, Abney argues that the tax garnishment is unavailable income under section 50515, subdivision (a), which provides that "[u]navailable income includes, but is not limited to," portions of the following types of income, provided that they meet certain criteria:  (1) "Worker's Compensation and other public or private insurance settlements," (2) "a contribution . . . [f]rom a person living in the household," (3) "monthly income of a medically needy person residing in a licensed board and care facility," and (4) "[a]n advance or a reimbursement from an employer to cover expenses necessary

18

for job performance." (Cal. Code Regs., tit. 22, § 50515, subd. (a).) The tax garnishment at issue plainly does not fall into any of these categories. Moreover, as Abney argues, each of the examples "share 'a unifying trait'— income that is beyond a person's control and unavailable to meet their needs." That is not the situation here.

## DISPOSITION

The order is affirmed. In the interests of justice, each side shall bear its own costs. (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*Abney v. State Department of Health Care Services* (A164775)

Trial Court:                                    San Francisco County Superior
                                                Court;

Trial Judge:                                    Honorable Suzanne Ramos Bolanos;

Attorney for Plaintiff and                      Western Center on Law & Poverty,
Appellant, Debra Abney:                         David Kane, Robert D. Newman,
                                                Richard A. Rothschild; Bay Area
                                                Legal Aid, Michael Keys;

Attorney for Defendants and                     Rob Bonta, Attorney General of
Respondents, State Department of                California, Cheryl L. Feiner, Senior
Health Care Services et al.:                    Assistant Attorney General,
                                                Gregory D. Brown, Charles J.
                                                Antonen, Supervising Deputy
                                                Attorneys General, Katherine J.
                                                Grainger, Deputy Attorney General.

Attorney for Respondent City and
County of San Francisco:                        David Chiu, City Attorney, Wayne
                                                Snodgrass, Tara M. Steeley Deputy
                                                City Attorneys