Filed 9/27/13  Certified for publication 10/16/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL RANDOLF CASSIDY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CALIFORNIA BOARD OF ACCOUNTANCY,<br><br>    Defendant and Respondent. | G046663<br><br>(Super. Ct. No. 30-2011-00466661)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andrew P. Banks, Judge.  Affirmed.

Carl R. Cassidy, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alfredo Terrazas, Senior Assistant Attorney General, Linda K. Schneider and Carl W. Sonne, Deputy Attorneys General, for Plaintiff and Respondent.

The California Board of Accountancy (the Board) revoked Carl Randolph Cassidy's certified public accountant (CPA) license for, inter alia, holding himself out and practicing as a CPA when he knew his license was expired. Cassidy petitioned the superior court for a writ of administrative mandamus that would order the Board to reinstate his license. The court denied Cassidy's petition. Cassidy now appeals from the judgment denying his petition. We affirm.

FACTS

On February 4, 2010, Cassidy received the Board's initial accusation alleging, inter alia, he practiced and held himself out as a CPA without a valid license in September and October of 2007.

In May 2010, a company named All In One Trading (AIOT) filed a complaint with the Board, alleging Cassidy was its former CPA and had purported to file its federal tax return in February 2010, but the Internal Revenue Service had no record of the return being filed.

On September 8, 2010 the Board filed an amended accusation against Cassidy, adding new allegations that he filed a tax return for and billed AIOT using his CPA designation on February 18, 2010 (less than two weeks after receiving the Board's initial accusation). The amended accusation alleged eight causes for discipline, including that Cassidy practiced and held himself out as a CPA in September and October of 2007 and February 2010.

An administrative law judge held a hearing on the amended accusation and thereafter wrote a proposed decision containing factual findings and concluding that cause existed for disciplining Cassidy on the first and the fourth through the eighth causes

2

for discipline, but not the second and third causes.[1] The Board adopted the proposed decision in its entirety and revoked Cassidy's CPA license.

Pursuant to Code of Civil Procedure section 1094.5, Cassidy petitioned the Superior Court for a writ of administrative mandamus compelling the Board to set aside its decision. The court, exercising its independent judgment, denied Cassidy's petition and found that the findings of the administrative law judge and the Board were supported by the weight of the evidence and that they had not abused their discretion in imposing the penalty of revoking Cassidy's license. The court stated both orally and in writing that it exercised its independent judgment in determining that the weight of the evidence supported the findings of the administrative law judge and the Board.

DISCUSSION

*Pending Motions*

Before discussing the merits of this appeal, we address two pending motions. The Board has requested we strike pages 30 through 111 of the clerk's transcript. Cassidy has requested we take judicial notice of six documents attached to his request.

*Board's Pending Motion to Strike Portions of the Clerk's Transcript*

Pages 30 through 111 of the clerk's transcript appear to have been inserted as an attachment to Cassidy's designation of the record on appeal. Cassidy identified these documents as "AIOT & Related Entities Tax Returns," and "AIOT Books & Records." He represented in his designation that these documents were "exhibits that

---

[1] The second and third causes for discipline alleged Cassidy misrepresented to the Board that he completed his continuing education requirements and that he secured his 2007 license renewal by misrepresenting that he had completed a class.

were admitted in evidence, refused, *or* lodged in the superior court," but had not been admitted into evidence. (Italics added.) The Board's motion to strike is supported by the declaration of counsel stating that pages 30 through 111 were "never admitted into evidence or otherwise considered by the administrative judge or the superior court in this matter." (The Board's memorandum acknowledges that pages 108 and 109 of the clerk's transcript appear in the administrative record at pages 358 and 359. Pages 110 and 111 of the clerk's transcript are identical to pages 108 and 109 of the clerk's transcript.) No contrary evidence has been submitted. Accordingly, the motion to strike is granted as to clerk's transcript pages 30 through 107.

In addition, it appears that pages 30 through 107 of the stricken portion of the clerk's transcript comprise tax returns and financial information of AIOT and its affiliates. The Board's motion includes an objection by AIOT to these documents being placed in the public record, and stating that Cassidy did not have permission to place them in the public record. We treat AIOT's objection as a motion to seal pages 30 through 107 and grant the motion. We make the following findings pursuant to California Rules of Court, rule 2.550(d): (1) There exists an overriding interest that overcomes the right of public access to these documents in that these documents were not the subject of any adjudication in this case, were placed in the public record without AIOT's consent, and thus there is *no* right to public access to these private documents; (2) The overriding interest of AIOT's right of privacy and confidentiality to its tax and financial records supports sealing this portion of the record; (3) AIOT's right of privacy and confidentiality to its tax and financial records will be prejudiced if these documents are not sealed because confidentiality has been invaded by the disclosure of wholly irrelevant confidential information without AIOT's consent; (4) This sealing order is narrowly tailored in that this order seals no more than is necessary to protect AIOT's privacy; and (5) There is no less restrictive means to protect AIOT's confidential records.

4

*Cassidy's Motion for Judicial Notice*

Cassidy has requested we take judicial notice of: (1) Documents related to the Board's allegation that Cassidy failed to comply with continuing education requirements and had misrepresented his compliance; (2) documents related to the Board's enforcement process; (3) documents related to the Board's budget; (4) documents related to an Internal Revenue Service complaint against Cassidy; (5) trial balance reports from AIOT; and (6) AIOT's loan agreement with a bank.

The documents related to continuing education requirements are not relevant to this appeal because the administrative law judge found the Board's second and third causes of discipline regarding the alleged continuing education violations *not to be true*. Thus, these allegations were not the subject of the writ of administrative mandamus in the trial court. The documents related to the Board's enforcement process and budget are irrelevant to the issues on appeal. We likewise perceive no relevance to the issues on appeal of the Internal Revenue Service complaint. Finally, the AIOT documents are similarly irrelevant to any issue we must decide. Cassidy has not demonstrated that these documents were presented or considered at the administrative hearing or in the superior court. Accordingly, Cassidy's motion for judicial notice is denied.

*Scope and Standard of Appellate Review of Trial Court's Denial of Cassidy's Petition*

When considering a petition for a writ of administrative mandamus, a court (whether a trial court in the first instance or an appellate court on appeal from the trial court's decision) considers the administrative agency's findings and decision to determine whether they are supported by the evidence and may also consider whether the agency abused its discretion in imposing its penalty. (Cal. Administrative Hearing Practice (Cont.Ed.Bar 2d ed. 2010) § 8.107, p. 495.)

5

Code of Civil Procedure section 1094.5 delimits the scope of the *trial* court's inquiry. The trial court considers whether the respondent agency lacked jurisdiction; "whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the . . . decision is not supported by the findings, or the findings are not supported by the evidence." (*Id*., subd. (b).) In reviewing the findings, the trial court exercises its *independent judgment* if statutorily required to do so or if the administrative decision involves a "'fundamental vested right'" (2 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2011) § 16.52, p. 640), such as revocation of a professional license (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 146). In such cases, "abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).) Nonetheless, "[i]n exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).) "The scope of the trial before the superior court is not an unqualified or unlimited trial de novo, but the trial proceeds upon a consideration of the record of the administrative proceedings which is received in evidence and marked as an exhibit." (*Borror v. Department of Investment* (1971) 15 Cal.App.3d 531, 537; see also *Helene Curtis, Inc. v. Los Angeles County Assessment Appeals Bds*. (2004) 121 Cal.App.4th 29, 37 [in Code Civ. Proc., § 1094.5 proceeding, evidence limited to administrative record with the narrow, discretionary exception set forth in subd. (e) for evidence that could not reasonably have been produced or was improperly excluded at administrative hearing].)[2]

---

[2] Cassidy appears to argue in his reply brief that the trial court's decision was deficient for failing to comply with Government Code section 11425.50. That statute,

An *appellate* court applies the following standards of review to a trial court's denial of a petition for a writ of administrative mandamus. First, if the trial court exercised its independent judgment, we review the record to determine whether the court's factual findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the court's decision. (*Fukuda*, *supra*, 20 Cal.4th at p. 824 ["Even when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test"]; *Bixby v. Pierno*, *supra*, 4 Cal.3d 130, 143, fn. 10 ["After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence"].)[3] Second, "to the extent pure questions of law (e.g., jurisdiction) were decided at the trial court upon undisputed facts, a de novo standard will apply at the appellate level." (*Anserv Ins. Services*, *Inc.. v. Kelso* (2000) 83 Cal.App.4th 197, 204.) Third, we review de novo whether the agency's imposition of a

___

however, applies to the prior stage, i.e., the adjudicative proceeding before the administrative agency. (Gov. Code, § 11425.10 et seq.)

[3] Contrary to Cassidy's assertion to the contrary, the trial exercised its independent judgment in determining that the weight of the evidence supported the Board's findings. Cassidy cites many cases for the proposition that an appellate court reviews the decision and findings of the administrative agency, rather than those of the trial court, but his cited cases involved traditional mandamus under Code of Civil Procedure section 1085 (*Taylor Bus Service, Inc. v. San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1340; *City of South Gate v. Los Angeles Unified School Dist.* (1986) 184 Cal.App.3d 1416, 1421; *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 382) or administrative mandamus where the trial court did not exercise its independent judgment (*Paoli v. California Coastal Com.* (1986) 178 Cal.App.3d 544; 551; *Davis v. California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708; *TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1370 [in case where trial court did not apply independent judgment, appellate court reviewed administrative decision]).

particular penalty on the petitioner constituted an abuse of discretion by the agency. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851; *Szmaciarz v. State Personnel Bd.* (1978) 79 Cal.App.3d 904, 921.)  But we will not disturb the agency's choice of penalty absent "an arbitrary, capricious or patently abusive exercise of discretion" by the administrative agency.  (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966.)

On appeal, Cassidy in many respects misapprehends the scope of our review.  In addition to the limitations discussed above, we do not consider matters raised for the first time on appeal, such as Cassidy's claims that the Board disregarded public policy, violated his due process and free speech rights, and maliciously prosecuted him outside its subject matter jurisdiction, or that exhibits were improperly numbered.  (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 ["to allow the issue to be raised here, when not presented before the trial court, would undermine orderly procedure on administrative mandamus"].)  "'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration."'"  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239.)  "'The appellate court is . . . confined in its review to the proceedings which took place in the court below and are brought up for review in a properly prepared record on appeal.'  [Citation.]  'Statements of alleged fact in the briefs on appeal which are not contained in the record and were never called to the attention of the trial court will be disregarded by this court on appeal.'"  (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.)  We disregard assertions and arguments that lack record references (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856) or lack citations to legal authority (*McComber v Wells* (1999) 72 Cal.App.4th 512, 522).  Although Cassidy is acting in propria persona, he must "be treated like any other party and is entitled to the same, but no greater

8

consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.)

*Admissibility of Board's Certified History of Cassidy's CPA Licensure*

At both the administrative and trial court proceedings, Cassidy objected on hearsay grounds to the admission into evidence of the Board's certification of his CPA license history. The document, dated August 9, 2010, was certified by Rafael Ixta, chief of the Board's enforcement division, Department of Consumer Affairs. Ixta certified he shared in "maintaining control and custody of files and records dealing with and pertaining to the duties and responsibilities of" the Board. Ixta further certified that on August 9, 2010, he made or caused to be made a diligent search of the files and records concerning Cassidy's certification and license history. Ixta further certified he determined that the official records prepared by Board employees, acting within the scope of their duties, showed the dates and time periods listed on the certified license history for the issuance, expiration, periods of invalidity, and renewals of Cassidy's certificate of public accountancy.

Under Business and Professions Code section 162,[4] the certificate of the officer in charge of the records of any board of the Department of Consumer Affairs, certifying "that any person was or was not on a specified date, or during a specified period of time, licensed, certified or registered under the provisions of law administered by the board, or that the license, certificate or registration of any person was revoked or under suspension, shall be admitted in any court as prima facie evidence of the facts therein recited." The administrative law judge informed Cassidy that, despite the document's admission into evidence, he could challenge the information in the license history. Furthermore, where an administrative agency's writing "does not depend on

---

[4] All statutory references are to the Business and Professions Code unless otherwise stated.

9

memory, but simply involves a transfer of information from one form of storage . . . to another," the timeliness requirement of the official records exception of Evidence Code section 1280 is met. (*People v. Martinez* (2000) 22 Cal.4th 106, 128.)

Thus, the trial court did not abuse its discretion by declining to exclude the certified history. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986 [trial court rulings on admissibility of evidence generally reviewed for abuse of discretion].)[5]

*Substantial Evidence Supports the Trial Court's Findings*

Although Cassidy's opening brief is not a model of clarity, we assume he challenges the sufficiency of the evidence to support the trial court's factual findings underlying the first and the fourth through eighth causes for discipline, particularly because the Board addresses those issues in its respondent's brief.

### 1. First and Sixth Causes for Discipline

In the first cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct by practicing and holding himself out as a CPA without a valid license around September 14 and 17 of 2007, October 5, 2007, and February 18, 2010. In the sixth cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct, from at least September 14, 2007, by misrepresenting his status as a CPA to clients and misrepresenting to AIOT that its 2008 federal tax return had been filed.

The Board's certified history of Cassidy's CPA licensure shows his license was expired, inter alia, (1) during the six-month period from August 1, 2007 to January 30, 2008, and (2) from August 1, 2009 to at least August 9, 2010 (the date of the certified

---

[5] Cassidy asserts a number of other evidentiary challenges in the factual recitation of his opening brief, but has waived those claims on appeal by failing to object at the administrative hearing and/or to the trial court's considering the evidence. (*Estate of Silverstein* (1984) 159 Cal.App.3d 221, 225.)

history).  Therefore, his license was expired on and around September 14 and 17 of 2007, October 5, 2007, and February 18, 2010.

Under section 5033, a CPA is any person who has received a certificate from the Board and holds a valid permit to practice.  A person may not practice public accountancy in California without a permit.  (§ 5050, subd. (a).)  A permit expires after two years if not renewed.  (§ 5070.5, subd. (a).)  To renew a permit, the holder must apply for renewal before the permit expires, pay the renewal fee, and give evidence of meeting the continuing education requirements.  (*Ibid.*)

Under section 5051, a person is deemed to be practicing public accountancy if he, inter alia, (1) holds himself out to the public as being skilled in accounting, and qualified and ready to render professional service as a public accountant for compensation (*id.*, subd. (a)), or (2) prepares or signs, as the tax preparer, tax returns for clients (*id.*, subd. (g); see also § 22258, subd. (a)(1) [CPA exempt from requirements pertaining to tax preparers]).  A person is not engaged in the practice of public accountancy solely because he prepares or signs tax returns for clients *if* he does not identify himself as a CPA on "signs, advertisements, letterhead, business cards, publications directed to clients or potential clients, or financial or tax documents of a client."  (§ 5051, subd. (i).)  Under section 5053, a non-CPA can serve as an employee of a CPA if the employee works under the control and supervision of a CPA *and* if the employee "does not issue any statement over his or her name."  A person with a CPA certificate from the Board may be styled and known as a "'certified public accountant'" and use the abbreviation "'C.P.A.'"  (§ 5055.)

On September 14 and 17 and October 5 of 2007, while his license was expired, Cassidy signed tax documents of clients with the designation "CPA" after his signature and using his own preparer tax identification number (PTIN).  His name was also typed (with the designation "CPA") in the box for "Preparer's signature" on tax returns dated in that same time period and for the same respective clients.  John Diehl,

11

who ran the accounting firm that employed Cassidy during this time period, testified that the individual preparer of a tax return is the one who has "the client contact, [does] the interview, [and] put[s] the information into the software in order to produce the return," *and* that Cassidy had responsibility for contacting the clients in question and prepared and submitted the tax returns using Cassidy's PTIN number. By using the CPA designation Cassidy misrepresented his license status to those clients, as well as expressly misrepresenting to Diehl that his license was valid.

In February 2010, Cassidy practiced and held himself out as a CPA with respect to AIOT. Cassidy's engagement letter with AIOT was on his "Cassidy & Burton, Certified Public Accountants" letterhead and was signed by him with the designation "CPA" above the typed identification "Carl R. Cassidy, CPA" and "Cassidy & Burton CPAs." Cassidy misrepresented to AIOT that he was a properly licensed CPA. He prepared AIOT's 2008 federal tax return, dated it February 18, 2010, typed his name with the designation "CPA" in the box for "Preparer's signature," and included his PTIN. In the box for the "Firm's name," Cassidy typed "CASSIDY & BURTON, CPAS." On February 18, 2010, Cassidy invoiced AIOT on his "CARL R. CASSIDY, CERTIFIED PUBLIC ACCOUNTANT" letterhead, billing AIOT over $16,000 for professional services rendered through February 18, 2010. AIOT promptly paid the bill. In an email message on April 1, 2010, Cassidy represented to AIOT that he had filed the company's tax return on February 18, 2010. AIOT learned that the Internal Revenue Service rejected or never received the electronic filing of the tax return and that Cassidy had never confirmed that the filing had cleared. AIOT made several attempts to contact Cassidy, but he did not respond.

Substantial evidence supports the factual findings underlying the first and sixth causes for discipline.

12

## 2. *Fourth and Seventh Causes for Discipline*

In the fourth cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct by submitting untrue statements to the Board. In the seventh cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct by failing to respond to the Board's inquiries, including its letter to him dated May 18, 2010.

In his January 31, 2008 renewal form submitted to the Board, Cassidy answered "Yes" to the question whether he was currently practicing public accountancy. Yet, in Cassidy's letter to the Board (received by the Board on Apr. 4, 2008), he stated that, during the period August 1, 2007 to February 10, 2008, he "was not involved in the practice of public accounting (attest services) as an employee or outside (his) employment." In an April 10, 2008 letter to Cassidy, the Board asked him to list "the specific services" he provided his employer's clients during the relevant time period. In an e-mail dated April 29, 2008, Cassidy replied that he "provided tax preparation and bookkeeping services to Diehl & Company, Inc. clients." Cassidy failed to respond on time to the Board's May 6, 2008 letter. In Cassidy's e-mail to the Board dated June 24, 2008, he reiterated that during his employment with Diehl, he "was not involved in the practice of public accounting (attest services) as an employee or outside (his) employment." In an August 13, 2008 letter, the Board asked Cassidy whether he had held himself out to the public, solicited, or advertised for clients using the CPA designation, e.g., on letterhead or on clients' tax documents, and whether he had signed any documents with the CPA designation as a Diehl employee. Cassidy answered evasively that he "did not offer [his] services to the public as a CPA."

The Board's May 18, 2010 letter to Cassidy ordered him to cease and desist from the practice of public accountancy since his license expired as of August 1, 2009. The letter requested Cassidy to provide a written response to AIOT's allegations against him. Cassidy never provided a written response. The Board's investigator concluded that Cassidy had not responded to Board inquiries and had ignored telephonic requests.

13

Substantial evidence supports the factual findings underlying the fourth and seventh causes for discipline.

### 3. Fifth and Eighth Causes for Discipline

In the fifth cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct by practicing under the name, Cassidy & Burton, CPAs, which name was not registered with the Board. In the eighth cause for discipline, the Board alleged Cassidy engaged in unprofessional conduct by advertising or using other forms of solicitation which were false, fraudulent, or misleading, or by using and advertising the unregistered name of "Cassidy & Burton, CPAs" and holding himself out as a CPA.

Cassidy's December 2, 2008 engagement letter with AIOT was on his "Cassidy & Burton, Certified Public Accountants" letterhead and was signed by him with the designation "CPA" above the typed identification "Carl R. Cassidy, CPA" and "Cassidy & Burton CPAs." On May 10, 2009, Cassidy signed an application to register the name, Cassidy & Burton, CPA's Inc., with the Board. On June 1, 2009, the Board returned the application to Cassidy and advised him the application could not be processed because the accountancy corporation's bylaws were deficient. On February 18, 2010, Cassidy typed "CASSIDY AND BURTON, CPAS" as the "Firm's name" on AIOT's 2008 federal tax return. On July 9, 2010, the Board's investigator conducted an Internet search and discovered Cassidy's name and photograph advertised on the Cassidy and Burton, CPAs, Web site. Cassidy was listed as a partner, with the designation, "CPA."

Substantial evidence supports the factual findings underlying the fifth and eighth causes for discipline.

*The Board Did Not Abuse Its Discretion by Revoking Cassidy's CPA License*

Cassidy argued below that even if he imprudently used the CPA designation on tax documents, the revocation of his license was an impermissibly severe penalty. At the trial court hearing, in response to the court's inquiry, Cassidy's counsel stated that Cassidy had the statutory option to reapply for a license after one year from the revocation of his license. (§ 5115.)

"In reviewing the severity of the discipline imposed, we look to the correctness of the agency's decision rather than that of the trial court." (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 217.) "'The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.] *Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.* [Citation.]' [Citation.] [¶] 'In reviewing the exercise of this discretion we bear in mind the principle "courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere."'" (*Id.* at p. 218, italics added.) "The policy consideration underlying such allocation of authority is the expertise of the administrative agency in determining penalty questions." (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967.)

The Board did not abuse its discretion by revoking Cassidy's license. Cassidy continued to use the CPA designation and deceived AIOT even after receiving notice of the Board's initial accusation against him. As the trial court stated, "I could see that the administrative law judge might say, we've got to protect the public from people like that — that is public harm . . . ."

DISPOSITION

The judgment is affirmed.  The Board is awarded its costs on appeal.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.

Filed 10/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL RANDOLF CASSIDY, | |
| Plaintiff and Appellant, | G046663 |
| v. | (Super. Ct. No. 30-2011-00466661) |
| CALIFORNIA BOARD OF ACCOUNTANCY, | O R D E R |
| Defendant and Respondent. | |

Respondent California Board of Accountancy has requested that our opinion, filed on September 27, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.