Filed 10/31/24

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| JEANNINE BEDARD, | B331062 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP03008) |
| v. | |
| CITY OF LOS ANGELES et. al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Gregory G. Yacoubian for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Shaun Dabby Jacobs and Blithe S. Bock, Assistant City Attorneys for Defendant and Respondent City of Los Angeles.

―――――――――

Because plaintiff Jeannine Bedard refused to comply with the City of Los Angeles's (the City) COVID-19 vaccination mandate and sign a "Notice of Mandatory COVID-19 Vaccination Policy Requirements" (the Notice) enforcing the mandate, the Chief of Police sought to terminate her employment as a Los Angeles Police Department (LAPD) officer. The LAPD Board of Rights (the Board) reviewed the Chief's proposed discipline, found Bedard guilty of failing to comply with conditions of employment, and upheld the decision to discharge Bedard. The Board also found the City failed to provide Bedard sufficient time to respond to the charges in violation of *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*)[1] and awarded her back pay. However, the City did not subsequently pay Bedard the back pay.

Bedard filed a petition for writ of mandate in the trial court, arguing the disciplinary action was procedurally and legally invalid, and seeking reinstatement and back pay. The trial court found the termination was justified, but the City violated Bedard's due process rights by giving her insufficient time to respond to the allegations. The trial court awarded her back pay.

Bedard appeals, arguing her termination was improper because it (1) was entirely based on her failing to sign the Notice, which was an illegal contract; (2) was too harsh a penalty under the circumstances; and (3) violated *Skelly*. We affirm.

---

[1] *Skelly* held, with respect to a permanent civil servant, that due process requires the employee be given, prior to termination, notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond to the authority initially imposing discipline. (*Skelly*, *supra*, 15 Cal.3d at p. 215.)

2

# FACTUAL AND PROCEDURAL BACKGROUND

## I. City Ordinance Mandating Vaccination or Exemption

In March 2020, the City declared an emergency due to the spread of COVID-19. In August 2021, the Los Angeles City Council passed Ordinance 187134, which required that all City employees be vaccinated against COVID-19 or request an exemption by October 19, 2021 "[t]o protect the City's workforce and the public that it serves." The ordinance stated City employees must receive their first dose of a COVID-19 vaccine by September 7, 2021, and the second dose by October 5, 2021. Alternatively, an employee could request an exemption by September 7, 2021. "Employees with medical conditions/restrictions or sincerely held religious beliefs, practices, or observances that prevent them from receiving a COVID-19 vaccine shall qualify for COVID-19 vaccine exemption, upon approval of documentation provided by the employee to the appointing authority or designee." An exempted employee was subject to weekly testing during work hours at no cost.

The ordinance explained: "The City's goal is to have a vaccinated workforce. As such, employees will not have the option to 'opt out' of getting vaccinated and become subject to weekly testing. Only those with a medical or religious exemption and who are required to regularly report to a work location are eligible for weekly testing." The ordinance contained an "Urgency Clause," declaring that the ordinance "is required for the immediate protection of the public peace, health and safety."

The City then engaged in negotiations with its labor organizations, including Bedard's Union, the Los Angeles Police Protective League (LAPPL), about the consequences for non-

3

compliance with the mandatory vaccination conditions of employment. After negotiations failed, the City issued its "Last, Best and Final Offer" (LBFO) on October 14, 2021. The LBFO stated the City would issue a notice to its unvaccinated, non-exempt employees, instructing each employee to be vaccinated or found to be exempt from the vaccination requirement by December 18, 2021. The LBFO stated that prior to full vaccination, the employee would pay for the interim testing that was to occur between October 20 and December 18, 2021, and that testing would not occur during work time. If an employee did not comply with this mandate, she would not be fulfilling a condition of employment, and she would be subject to "appropriate and immediate corrective action." An employee terminated for noncompliance with the COVID-19 vaccine mandate could seek "reemployment" with the City, subject to the COVID-19 vaccination requirements. Alternatively, an employee could resign or retire, then after the vaccination order is lifted, they would be eligible for rehire.

On October 26, 2021, the City Council adopted a resolution implementing "consequences" for failing to comply with Ordinance 187134. The resolution stated that an emergency existed; the City and its labor organizations, including the LAPPL, had reached a "stalemate" in negotiations. It explained that because the COVID-19 pandemic had created a "catastrophic public health emergency" and a "compelling need for . . . unilateral action," the terms and conditions of the LBFO were effective immediately. The resolution also stated: "compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases" and "vaccination is

4

the most effective way to prevent the spread of COVID-19 and to limit COVID-19 hospitalizations and deaths."

On October 28, 2021, the mayor issued a memorandum to all City department heads regarding the LBFO. The memorandum declared that COVID-19 had created "a catastrophic public health emergency," and the vaccination mandate was "critical to protecting the health and safety of our workforce and the Angelenos we serve." The memorandum directed all City departments to implement the LBFO and issue a notice to every unvaccinated employee, wherein the employee was to acknowledge the deadline for becoming vaccinated and the testing requirements. Employees were required to sign the notice within 24 to 48 hours. Employees who refused to sign the notice were to "be placed off duty without pay," and sworn employees were to "be subject to applicable Board of Rights proceedings."

## II. Bedard's Failure to Comply with the Vaccine Mandate

Bedard never submitted documentation showing she had been vaccinated or had applied for an exemption and would be tested. On November 5, 2021, Bedard's supervisor, Deputy Chief (then-Commander) Donald Graham, gave Bedard a "Notice of Mandatory COVID-19 Vaccination Policy Requirements." The Notice stated: "To protect the City's workforce and the public it serves, City of Los Angeles Ordinance 187134 ('COVID-19 Vaccination Requirement For All Current and Future City Employees') was enacted on August 24, 2021, requiring all employees be fully vaccinated for COVID-19 by October 20, 2021, or request a medical or religious exemption, and report their vaccination status by October 19, 2021. To maximize compliance with the Ordinance, the City is affording a final opportunity for

5

current City employees to become fully vaccinated by December 18, 2021, prior to appropriate corrective action being taken." The Notice requested Bedard to sign a statement certifying that she would be fully vaccinated for COVID-19 by December 18, 2021, and in the interim, she would undergo biweekly COVID-19 testing at her own cost and on her own time until December 18, 2021. It further stated, "I understand I must begin the vaccination process as soon as possible so as to be fully vaccinated no later than December 18, 2021, and I will report my progress to the City after receiving my first and second vaccination dose." The Notice further required Bedard to certify: "I understand that if I do not follow all of the terms and conditions herein, including showing proof of being fully vaccinated by December 18, 2021, I will immediately be placed off duty without pay pending pre-separation due process procedures (Skelly) and I will be served with a written notice of proposed separation from City employment for failing to meet a condition of employment." Bedard would not sign the Notice and she instead had Commander Graham write "refused" on the signature line.

Two days later, on November 7, 2021, Bedard sent an email to Commander Graham and others, stating that she would not be vaccinated. Bedard explained that she was refusing the vaccine because her daughter had an adverse reaction to it. Bedard did not mention any religious or medical reason for a vaccination exemption.

On November 10, 2021, the City served Bedard with a "Complaint Adjudication Form" and "Notice of Proposed Disciplinary Action" for failing to comply with the ordinance's

6

requirements. The notice of proposed discipline gave Bedard until November 15, 2021 to respond orally or in writing.

On November 16, 2021, LAPD served Bedard with a Complaint and Relief from Duty, alleging, "On or about November 7, 2021, you, while on duty, failed to sign and/or comply with the requirements of the Notice of Mandatory COVID-19 Vaccination Policy Requirements, a condition of employment." She was "temporarily relie[ved] from duty" effective November 17, 2021, pending a hearing before the Board of Rights.

## III.    Board of Rights Hearing

At Bedard's Board of Rights hearing, Bedard testified that she had been a police officer since April 1998 and her last assignment was in the Transit Services Bureau. On November 5, 2021, then-Commander Graham served her with the Notice of Mandatory COVID-19 Vaccination Policy Requirements. Bedard testified that she understood what the Department was asking of her in the Notice. Bedard stated the testing was "the main issue" for her. She did not understand why she was being charged for the COVID testing. She told Graham to write "refused" on the signature line because she objected to paying for the testing and giving her personal information to Bluestone, the company the City contracted with to perform testing. She understood that becoming vaccinated, paying for testing, and providing her information to Bluestone were conditions of employment.

Bedard testified that she emailed Graham and others, indicating she would not get vaccinated because of the reaction her daughter had to the vaccine. Bedard stated she did not apply for a medical exemption since it was her daughter who had the adverse reaction, not Bedard. Bedard testified that she also did

7

not apply for a religious exemption because she would still have to pay for the testing. After pointing out that the LAPD's policies were evolving regarding the frequency and type of testing, Bedard stated "[t]here's a lot of different things that are happening that I can't believe I'm in this position. I have no problem complying and following the rules when they make sense to me." She testified that she did not sign the vaccination policy because "what is the point of my signature on something that I don't really agree with." Bedard understood that she could be rehired by the Department if she were vaccinated.[2] Bedard's counsel argued that the contract was illegal because Labor Code section 2802[3] prevented the City from making her pay for testing.

On July 13, 2022, the Board of Rights unanimously found, after giving "exhaustive consideration to all of the evidence and the law," that Bedard failed to comply with the ordinance. The Board stated that Ordinance 187134, which had the "full force

---

[2]     Others also testified, including Deputy Chief Donald Graham, the City analyst who tracks employee vaccination statuses, the City investigator responsible for the investigation of Bedard, and a detective supervisor for the Officer Representation Section.

[3]     All undesignated statutory references are to the Labor Code.

Section 2802, subdivision (a), states: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

and effect of the law," required all City employees to obtain a COVID-19 vaccine. Since Bedard did not apply for a vaccination exemption and did not work remotely, Bedard was obliged to become vaccinated or seek an exemption and regular testing, which she did not do. The Board explained that her daughter's adverse reaction to the vaccine was not a valid medical reason for an exemption. The Board also concluded Bedard's refusal to sign the Notice was a violation of a condition of her employment. The Board rejected Bedard's argument that section 2802 prevented the City from making her pay for testing. The Board reasoned that section 2802 was inapplicable as it applied to private employers, not public entities.

The Board stated it had reviewed Bedard's personnel file and that she was a highly qualified and excellent employee. It nonetheless found that Bedard's willful refusal to comply with the ordinance required the Board to uphold her termination.

Lastly, the Board concluded Bedard had not been given sufficient time to respond to the charges, in violation of *Skelly*. The Board awarded her back pay from the date of her discipline (November 10, 2021) to the time the discipline was validated (July 13, 2022).

The Chief of Police subsequently found that the Board did not have jurisdiction to award Bedard back pay. On the Board's findings, the Chief of Police wrote he "will not comply" with the back pay order.

## IV. Bedard's Petition for Writ of Mandate in the Trial Court

In August 2022, Bedard filed a petition for writ of mandate, seeking to "(1) set aside her termination and restore her position with backpay; (2) set aside the Board of Rights'[s] finding of guilt;

9

and (3) remove the record of this charge or penalty from her record." She also sought attorney fees and costs.

On April 18, 2023, in a detailed 13-page decision, the trial court affirmed the LAPD's decision to terminate Bedard, but found she was entitled to back pay for the *Skelly* violation. The court found: "[T]he Vaccination Notice had three conditions of continued employment: (1) Bedard's signature on the Vaccination Notice; (2) her agreement to be fully vaccinated by December 18, 2021; and (3) her agreement to testing with Bluestone in the interim before December 18 with her reimbursing the City's testing expense through paycheck deductions. The undisputed facts show that Bedard did not sign the Vaccination Notice and did not become fully vaccinated by December 18, 2021. There also is no evidence that she tested, either through Bluestone or any other vendor."

Without deciding the issue, the court assumed section 2802 barred the City from requiring its employees to pay for their own COVID-19 testing.[4] Given this assumption, the trial court found that Bedard's refusal to test in accordance with the City's

---

[4] The trial court later stated, "The City also is correct (Opp. at 9–10) that the express language of section 2802 only creates a duty for an employer to indemnify an employee for costs; it does not require that costs be advanced or made available for free. See *Edwards* [*v. Arthur Andersen LLP* (2008) 44 Cal.4th 937,] 952 (section 2802 codifies policy that favors indemnification of employees for claims and liabilities from the employees' acts within the course and scope of their employment). Under the plain language of section 2802, the City can mandate employees to periodically test and then be required to indemnify their cost. Bedard presents no evidence that she intended to or did incur any testing costs before December 18, 2021."

10

requirements did not violate the conditions of her employment. However, the court concluded Bedard still violated the two remaining conditions of employment: refusing to be vaccinated and refusing to sign the Notice. The trial court explained:

"Bedard's refusal to agree to be vaccinated by December 18, 2021 violated her conditions of employment. She did not seek a medical or religious exemption. Instead, on November 7, 2021, Bedard emailed Graham that she had decided not to take the vaccine. AR 712. She explained that her daughter suffered an adverse reaction to the Pfizer vaccine, and she did not want to take the same risk. AR 712. This email was a direct violation of her conditions of employment. As the City argues (Opp. at 5), Bedard opposed [the] vaccination policy to 'make a stand' based upon her personal opinions and her actions were insubordinate.

"Bedard's refusal to sign the Vaccination Notice also violated her conditions of employment. Graham discussed the contents of the Vaccination Notice with Bedard, and she understood them. AR 351-52. She understood that taking the vaccine, paying for testing, and putting her information into a Bluestone account all were conditions of employment. AR 357. Yet, she refused to sign. AR 352.

"Bedard testified that Bedard did not agree to that which was asked in the Vaccination Notice, primarily the payment for testing. AR 352. She was being asked to sign a document with which she knew LAPPL had issues. AR 352. The testing was the main issue for her, and she could not understand why she would be charged $560 for testing if LAPD was offering free testing to everyone else. AR 352-53, 359.

"Bedard also testified that she had Graham write 'refused' because she objected to paying for testing and submitting the

11

tests to Bluestone, not signing the Vaccination Notice itself. AR 353-55. If the [N]otice said that she would not be charged for testing or submit information into a third-party vendor, she would have agreed to the Vaccination Notice. AR 354, 356.

"The court concludes that Bedard could not have meant this last point in her testimony—that she would have signed the Vaccination Notice if she were not charged for testing. Doing so would mean that she would agree to be vaccinated by December 18, 2021, which is completely inconsistent with her rationale for not being vaccinated, both in her email to Graham and her testimony. Bedard could only have meant that she would not dispute the Vaccination Notice's testing requirement if she could have free testing. But Bedard would not have signed the Vaccination Notice even in that circumstance because she would be agreeing to be vaccinated.

"As the City contends (Opp. at 6-7), Bedard made plain in her testimony that her attitude toward the City's policy was about the vaccination, not testing costs. She testified that she has, 'no problem complying and following the rules when they make sense to me,' implying that she will not follow rules with which she does not agree. AR 363. She emphasized that she 'took a stance by the grace of God,' and stated that 'not to tout that I am this saint, [but] what I am saying is that we can't all just go along to get along, sometimes we have to bring some commonsense back in.' AR 631. This testimony was all about vaccination, not testing.

"Although she does not so argue, Bedard could contend that the illegality of the testing requirement infected the rest of the Vaccination Notice and permitted her to refuse to sign it. However, the court believes that Bedard seized on [the] section

12

2802 issue in her testimony before the Board of Rights as a matter of convenience. Tellingly, she did not object to Graham on November 5, 2021 that she did not want to pay for testing, and her November 7, 2021 email to Graham says nothing about the cost of testing. It makes no sense for Bedard to make a personal choice that she did not want to be vaccinated and then rely on the cost of testing as the reason she did not sign the Vaccination Notice. The court concludes that Bedard's testimony about the cost of testing was a *post hoc* makeweight that was not her real reason for refusing to sign the Vaccination Notice on November 5, 2021." (Fns. omitted.)

The court then addressed Bedard's contention that her dismissal was an excessive and disproportionate penalty for her failure to sign the Notice given her excellent employment record. The court found: "Bedard mischaracterizes the reasons for her discharge, which are that she refused to be vaccinated and refused to sign the Notice of Vaccination, both of which were conditions of employment. Because they were conditions of her employment, any analysis of Bedard's performance or qualifications as an employee is irrelevant. She did not meet the conditions and could not remain an employee. [¶] Additionally, an analysis of the abuse of discretion issue weighs in favor of discharge. The City promulgated the vaccination policy as a means to deal with the COVID-19 pandemic. The harm to public service by an employee who refuses to vaccinate is self-evident. Her decision puts all other public employees, and the members of the public who deal with them, at risk." The court also explained, "there is a likelihood that such conduct will recur in the event of a renewed COVID pandemic, or another health pandemic where Bedard does not agree with the City's remedy. While the City's

13

use of the same Vaccination Notice is unlikely, it is likely that the City would require employee vaccination. Yet, there is no reason to believe that Bedard would change her mind and be vaccinated."

The trial court also agreed with the Board that the City violated Bedard's *Skelly* rights by giving her only five days to respond to the notice of proposed discipline, not the full 30 days required by the Memorandum of Understanding between LAPD and LAPPL. The trial court found Bedard was "entitled to backpay from December 17, 2021, to July 20, 2022," i.e. from the date she was "taken off the payroll until due process [wa]s satisfied through affirmance of discharge by administrative appeal."

The trial court entered judgment on May 11, 2023, and Bedard timely appealed on May 17, 2023.

## DISCUSSION

Bedard asserts we should reverse her termination because it was entirely based on failing to sign the Notice, which was void because it violated section 2802, and termination was too harsh a penalty under the circumstances and thus she should be reinstated. She also contends she is entitled to reinstatement, not just back pay, for the *Skelly* violation. We address each issue in turn.

## I. Standard of Review

Administrative mandamus is available to obtain judicial review of a public agency "decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal,

14

corporation, board, or officer." (Code Civ. Proc., § 1094.5, subd. (a).) In a proceeding for administrative mandate, the judicial inquiry extends to whether the public agency "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion is established if the public agency "has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*) " '[R]arely, if ever, will a board determination be disturbed unless the petitioner is able to show a jurisdictional excess, a serious error of law, or an abuse of discretion on the facts.' " (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 814 (*Fukuda*); *Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1130–1131.)

The trial court reviews the administrative decision de novo but affords the administrative findings "a strong presumption of correctness." (*Fukuda*, *supra*, 20 Cal.4th at p. 817.) "[T]he party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Ibid.*)

" ' "When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court: the only question is whether the *trial court's* (not the administrative agency's) findings are supported by substantial evidence. [Citation.] Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court." [Citation.]['] . . . [¶] ' "Evidence is substantial if any

15

reasonable trier of fact could have considered it reasonable, credible and of solid value." [Citation.] Additionally, a reviewing court "may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence." [Citation.]' " (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796; *Fukuda, supra,* 20 Cal.4th at p. 824.) "However, we are not bound by any legal interpretations made by the administrative agency or the trial court; rather, we make an independent review of any questions of law." (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 575 (*Rand*).)

We also "review de novo whether the agency's imposition of a particular penalty on the petitioner constituted an abuse of discretion by the agency. [Citations.] But we will not disturb the agency's choice of penalty absent ' "an arbitrary, capricious or patently abusive exercise of discretion" ' by the administrative agency." (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627–628 (*Cassidy*).)

## II.    Substantial Evidence Supports the Trial Court's Conclusion that Bedard's Termination Was Based on Her Refusal to Become Vaccinated, Not Just Her Refusal to Sign the Notice

Bedard contends she was terminated solely for her failure to sign the Notice, which she urges violated section 2802 because it required her to pay for the interim COVID-19 testing that was to occur between November 7 and December 18, 2021.[5] She

---

[5] At oral argument before this court, Bedard's counsel argued that violating the ordinance was not sufficient to show Bedard

16

contends this clause of the Notice rendered the entire agreement void, citing section 2804.[6] She therefore argues her termination was unlawful. We disagree.

First, we conclude that Bedard forfeited her argument that she was not terminated for violating the ordinance and that she instead was solely terminated for her failure to sign the Notice because she did not make this argument in the Board proceedings or before the trial court. (*Rand*, *supra*, 206 Cal.App.4th at p. 587 [contention not raised at the administrative hearing or in the trial court is forfeited]; *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 41 [argument not presented to trial court during administrative appeal is forfeited].) Notably, at the Board hearing, the City argued in its closing argument that the ordinance required Bedard and all City employees to vaccinate or file an exemption, and that her failure to do either was a violation of her conditions of employment. The City argued: "this hearing comes down to one thing and only one thing. It is black and white. The City of Los Angeles lawfully passed a legal ordinance requiring all City employees to become vaccinated against COVID-19 or request an exemption and follow

violated a condition of her employment because the complaint against Bedard did not reference the ordinance. Counsel asserted "the ordinance is a side issue . . . and the City mushed the two [issues of the Notice and the ordinance] together."

[6] Section 2804 states: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

the testing procedures.  These are conditions of employment for a City employee to keep their job.  Sergeant Bedard did neither of these."  Bedard's counsel did not counter the City's argument that compliance with the ordinance was a condition of Bedard's employment or that her noncompliance with it was a cause of her termination.  Instead, Bedard's counsel argued that the Notice was illegal and that her due process was violated.[7]  The trial court likewise stated that one "issue with respect to termination is . . . whether then Sergeant Bedard refused to be vaccinated pursuant to the City's ordinance."  The trial court subsequently found Bedard's failure to vaccinate defied the ordinance and thus was cause for termination.  At this juncture too, Bedard's counsel failed to argue that her noncompliance with the *ordinance* was not a basis for her termination.

Second, substantial evidence supports the trial court's finding that Bedard was not terminated just for failing to sign the Notice but also because she refused to comply with the vaccine mandate set forth in the ordinance.  The complaint charged Bedard with failing to "sign and/or *comply* with the requirements of the Notice of Mandatory COVID-19 Vaccination

---

[7]     We also observe that during the administrative hearing, the City's counsel asked Bedard:  "At the time, did you understand that refusing to sign this document was a condition of employment?"  In response, Bedard testified:  "So what I understood is, refusing to agree to paying for the testing, to putting my information into the Bluestone account, to actually not receiving the vaccine, was a condition of employment, he explained that to me.  Not the actual physical signing, which I think we are splitting hairs but."  Based on Bedard's testimony, it appears signing the Notice was beside the point.

Policy Requirements." (Italics added.) The Notice itself expressly stated its purpose was to give non-compliant employees one last opportunity to comply with Ordinance 187134 by becoming vaccinated by December 18, 2021. The Notice described the condition of employment at issue as: "the condition of employment to be fully vaccinated."

Bedard did not apply for a religious or medical exemption and she expressly told her commanding officer in an email that she would not be vaccinated for personal reasons. This refusal alone clearly violated the ordinance's vaccination requirement and the Notice's requirements enforcing the ordinance. To the extent Bedard asserts that her termination was solely based on her refusal to sign the Notice because she "was relieved of duty and facing termination just days after refusing to sign the Notice," she ignores that this disciplinary action also occurred *just days* after she sent her commanding officer and other superiors the email stating that she would not be vaccinated.

Substantial evidence further supports the trial court's conclusion that Bedard's "testimony about the cost of testing was a *post hoc* makeweight that was not her real reason for refusing to sign the Vaccination Notice." As the trial court explained, Bedard would not have signed the Notice even if testing were free because "[d]oing so would mean that she would agree to be vaccinated by December 18, 2021, which is completely inconsistent with her rationale for not being vaccinated, both in her email to Graham and her testimony." Bedard's email to her superiors and her testimony illustrated that her decision not to sign was really about vaccination, not the cost of testing.

In the email, which did not mention anything about the cost of testing, she wrote: "I had a lengthy conversation with my

19

family and based on the fact my daughter suffered an adverse reaction from the Pfizer vaccine, I could not voluntarily take this vaccine. . . . [¶] I believe in my heart this is the right decision, as you believe in your heart you are doing the right thing by following orders and serving officers with these documents."

She testified that she has "no problem complying and following the rules when they make sense to" her. She described her decision not to vaccinate as taking "a stance by the grace of God" because she was "given the opportunity to be able to stand strong in what [she] believe[s]." She explained, "we can't all just go along to get along, sometimes we have to bring some commonsense back in."

On appeal, Bedard conspicuously avoids addressing the substantial evidence that she violated the vaccination condition of her employment. We note that Bedard's brief also does not discuss the substantial evidence standard of review.[8] Although a statement of the standard of review is not a technical requirement of an appellate brief, "[f]ailure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) This is because " '[a]rguments should be tailored according to the applicable standard of appellate review.' " (*Ibid.*)

Here, the crucial question that Bedard avoids addressing is whether there was substantial evidence to support the trial court's conclusion that Bedard violated her employment conditions. As explained above, ample evidence supported the

_____

[8]     Bedard solely mentions that we review de novo the penalty imposed.

trial court's conclusion that she violated the vaccination condition.  We need not decide whether the condition requiring her to pay for the interim testing violated section 2802,[9] or that signing the Notice was not a valid condition of employment, because (1) Bedard never intended to become vaccinated and thus no interim testing was necessary, and (2) there is substantial evidence that Bedard violated the ordinance's vaccination mandate.  Her refusal to vaccinate without an exemption, standing alone, supported the City's disciplinary action.

## III.    The Board Did Not Abuse Its Discretion by Terminating Bedard for Failing to Comply with the Vaccination Policy

Bedard asserts that termination of her employment was too harsh a penalty under the circumstances and that she "is entitled to a remand to the trial court for an award of reinstatement to her position with back pay and benefits."[10]

---

[9]     Without deciding the issue, the trial court assumed section 2802 barred the City from requiring its employees to pay for their own COVID-19 testing.  Therefore, the trial court found that Bedard's refusal to test with Bluestone did not constitute a violation of an employment condition.  However, the trial court also stated later in its decision that because the express language of 2802 only creates a duty for an employer to indemnify the employee for costs, "the City can mandate employees to periodically test and then be required to indemnify their cost."

[10]     Bedard is correct that we review de novo the trial court's assessment of the penalty.  However, as mentioned above, we review whether the Board's "imposition of a particular penalty on the petitioner constituted an abuse of discretion by the [Board]." (*Cassidy*, *supra*, 220 Cal.App.4th at p. 627.)

21

"A review of disciplinary action involves consideration of ' "the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service' . . . , the circumstances surrounding the misconduct and the likelihood of its recurrence." ' " (*Noguchi v. Civil Service Com.* (1986) 187 Cal.App.3d 1521, 1545.) "Of these three factors, harm to the public service is the 'overriding consideration.' " (*Ibid.*)

Here, the Board acknowledged that the ordinance stated the vaccination and reporting requirements were conditions of employment and " 'a minimum requirement for all employees.' " The Board noted that despite Bedard's awareness of this, she neither became vaccinated nor filed for an exemption. As either vaccination or an exemption was a minimum requirement for Bedard's employment, the Board found her termination was the appropriate penalty.

We conclude the Board did not abuse its discretion in finding that termination was the appropriate remedy. The vaccination requirement's objective was to "[t]o protect the City's workforce and the public that it serves" from a dangerous illness during a global pandemic. The City's resolution observed that "compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases" and "vaccination is the most effective way to prevent the spread of COVID-19 and to limit COVID-19 hospitalizations and deaths." At the Board hearing, a senior personnel analyst for the LAPD testified that the ordinance was implemented to make "the workplace and the City safer." Bedard's refusal to vaccinate placed Bedard, her coworkers, and the public with whom she interacted while on duty at a significant risk of harm. Bedard offers no argument otherwise in her briefs on appeal. Since

22

Bedard expressed in the email her intention to not become vaccinated, the Board could reasonably infer that at the point in time it was making its decision, the public harm would be recurring.[11]

Bedard cites *Skelly*, *supra*, 15 Cal.3d 194, for the principle that the severity of the disciplinary action must reflect the severity of the misconduct. Yet, Bedard does not explain how her conduct was not severe and does not cite a case illustrating that the refusal to vaccinate against a deadly disease warrants lesser discipline than termination. (See *Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 [failure to provide argument or authority forfeits contention].) She does not describe how harm from her refusal to vaccinate could be eliminated or mitigated.

As explained above, the Board did not abuse its discretion in concluding that termination was appropriate given that

---

[11]    At oral argument, Bedard's counsel argued that statements made by the police chief during a podcast from November 2022 that both vaccinated and unvaccinated people can contract and transmit the virus, and the City's June 2024 amendment to the Administrative Code ending the vaccination requirement, show that no public harm would come from Bedard's refusal to vaccinate. Yet, as the trial court pointed out, the podcast discussed after-the-fact events that had no bearing on the Board's July 2022 decision. The same is true for the recent amendment ending the vaccination requirement—it has no bearing on the Board's decision. We also conclude that because Bedard's opening brief and reply brief failed to brief this issue, it is forfeited on appeal. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153 [brief must contain reasoned argument and legal authority or the court may treat contention as forfeited]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

23

Bedard's refusal to become vaccinated placed the public and her coworkers at risk of harm on a daily basis.

## IV.  The *Skelly* Violation Did Not Require Reinstatement

As mentioned above, the trial court agreed with the Board that the City violated Bedard's *Skelly* rights by failing to afford her the full 30 days to respond to the charges against her.  The court awarded her back pay to remedy the due process violation.  Bedard argues, as her counsel did below, that back pay was an insufficient remedy for the *Skelly* violation.  She asserts that had she been given the full 30 days to respond to the charge against her, there was a reasonable probability she would have avoided being terminated and that she is entitled to reinstatement, rather than just back pay, for the *Skelly* violation.

In *Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395 (*Barber*), the Supreme Court held that the appropriate remedy when a permanent civil service employee is denied a *Skelly* hearing prior to termination "is to award back pay for the period of wrongful discipline." (*Id.* at p. 402.)  The court explained: "The constitutional infirmity of the disciplinary procedures used in the present case was the imposition of discipline prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond.  [Citation.]  This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline.  [Citation.]  Under the procedures applied to [the] plaintiff, the constitutional vice existed until the time the board rendered its decision.  Prior to that time, the discipline imposed was invalid." (*Id.* at p. 403.)  The Supreme Court went on to conclude that the employee's termination was not wrongful (*id.* at p. 404), but the employee was entitled to back pay from the time

24

of his dismissal to the date the State Personnel Board's decision was filed based on the *Skelly* violation (*id.* at p. 405).

Recently, an appellate court noted that, "*Barber* makes clear that whether the employer had a legitimate basis to terminate the employee's employment and whether the employee is entitled to reinstatement are questions entirely distinct from whether the employee is entitled to backpay for the period during which the discipline was invalid. *Barber* establishes without caveat that the employee is entitled to 'back pay for the period of wrongful discipline' (*Barber v. State Personnel Board*, *supra*, 18 Cal.3d at p. 402); what makes the discipline 'wrongful' has nothing to do with whether the employer had a legitimate basis for terminating the employment. The discipline was wrongful solely because it was imposed in violation of the employee's right to due process." (*Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147, 1162.)

Bedard asserts there was a reasonable probability she would have been able to avoid termination had she had the full 30 days to respond to the charges. In light of Bedard's testimony indicating that she would not vaccinate and did not fall under a religious or medical exemption, she offers no credible explanation of how termination could have been avoided. Moreover, she fails to cite any law to support her contention that reinstatement is an available remedy for the due process violation. (See *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 ["Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority. [Citation.] If either is not provided, the appellate court may treat the issue as waived."].) Since *Barber* established that the only remedy for the

violation of an employee's due process is back pay when her discharge is justified, we affirm on this ground as well.

## DISPOSITION

The judgment is affirmed.  Respondent City of Los Angeles is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.